THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| GABRIEL ANTONIO SANCHEZ URBINA, <br><br> Petitioner, <br><br> v. <br><br> PAUL WIMMER, et al. <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:26-cv-00518-RJS <br><br> District Judge Robert J. Shelby |

Pending before the court is Petitioner Gabriel Antonio Sanchez Urbina's Petition for Writ of Habeas Corpus.[1]  For the reasons set forth below, the court GRANTS the Petition in part and orders Respondents to provide a bond hearing for Sanchez before an immigration judge.

BACKGROUND[2]

A. Petitioner Sanchez

Petitioner Sanchez is a native and citizen of Nicaragua.[3]  In December 2021, Sanchez entered the United States without a visa, and Department of Homeland Security (DHS) agents arrested him near the border and placed him in custody.[4]  On January 5, 2022, he was released

---

[1] Dkt. 1, *Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (*Petition*); *see* 28 U.S.C. § 2243 (authorizing the issuance of a writ of habeas corpus).

[2] The following facts are drawn from the Petition, Response to Order to Show Cause, and attachments therein.  *See Petition*; Dkt. 8, *Response to Order to Show Cause* (*Response*).  The facts discussed in this section are not disputed by the parties in their Response and Reply briefs.

[3] *Petition* ¶ 1; Dkt. 8-1, *Notice to Appear* at 1.

[4] *Petition* ¶¶ 2–3, 8–10; *Notice to Appear*.

on his own recognizance pursuant to 8 U.S.C. § 1226(a).[5]  Once in the United States, Sanchez applied for asylum and received a work authorization.[6]  His asylum application remains pending and he has a hearing before an immigration judge scheduled for 2029.[7]  Sanchez has no criminal history.[8]

On May 31, 2026, Sanchez was driving from his work when U.S. Immigration and Customs Enforcement (ICE) agents stopped his vehicle.[9]  The agents arrested Sanchez.[10] Sanchez remains in ICE custody at the Tooele County Jail and has not been allowed to seek release on bond.[11]

## B.  The Immigration and Nationality Act (INA)

Congress has codified three detention regimes for noncitizens: 8 U.S.C. §§ 1225, 1226, and 1231.[12]  At issue in this case are the provisions under §§ 1225 and 1226.[13]

Section 1225 requires the detention without bond of "inadmissible" noncitizens who are subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other arriving aliens, as

---

[5] The Order of Release on Recognizance identifies the authority for release as "section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226.  Dkt. 1-1, *Order of Release on Recognizance* at 1; s*ee also Petition* ¶¶ 8–11, 71.

[6] *Petition* ¶¶ 16–17.

[7] *Id.* ¶¶ 15, 17, 26.

[8] *Id.* ¶ 19.

[9] *Id.* ¶¶ 20–24; Dkt. 8-3, *Record of Deportable/Inadmissible Alien* at 2 ("Subject SANCHEZ-Urbina . . . was encountered via vehicle stop near 833 E. 1050 S., American Form Utah on 5/31/2026 at 0759 as a result of targeted enforcement, SANCHEZ was the target . . .").

[10] *Petition* ¶¶ 22–24.

[11] *Id.* ¶ 31; *id.* at 1; Dkt. 8-4, *Notice to EOIR: Alien Address*.

[12] *Nken v. Holder*, 556 U.S. 418, 423 (2009); *see also* 8 U.S.C. §§ 1225, 1226, 1231.  The INA refers to noncitizens as "aliens."  *See, e.g.*, 8 U.S.C. § 1101(a)(3).  The term "alien" and "noncitizen" may be used interchangeably. *Compare Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106 (2020) (using "aliens"), *with Thuraissigiam*, 591 U.S. at 158 (Sotomayor, J. dissenting) (using "noncitizens").  Accordingly, the court uses both terms throughout this Order.

[13] *See Petition*; *Response*.

defined by the governing regulations.[14]  Noncitizens who are deemed inadmissible under § 1225 are subject to deportation "without further hearing or review."[15]

Section 1226 governs detention pending the outcome of standard removal proceedings.[16] Removal proceedings, as outlined in § 1229, provide a noncitizen with notice, the opportunity to secure counsel, and a hearing before an immigration judge.[17]  Significantly, in contrast to § 1225, noncriminal aliens who are detained under § 1226 are entitled to a bond hearing and may be released on bond or conditional parole.[18]

On July 8, 2025, DHS issued a notice of "Interim Guidance Regarding Detention Authority for Applicants for Admission" (DHS Policy).[19]  The DHS Policy "requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission'" under § 1225, and thus subject to mandatory detention and "not entitled to the due process protections found within § 1226(a)."[20]  In other words, ICE employees should categorize all noncitizens as applicants for admission not entitled to a bond hearing or conditional parole.  In September 2025, the Board of Immigration Appeals upheld the DHS Policy, concluding immigration judges lack jurisdiction to hold bond hearings for noncitizens subject to mandatory detention under the DHS Policy's interpretation of §§ 1225 and

---

[14] 8 U.S.C. § 1225; *see also* 8 C.F.R. §§ 1.2, 1001.1(q).

[15] 8 U.S.C. § 1225(b)(1)(A)(i).

[16] *Id.* § 1226(a).

[17] *Id.* § 1229.

[18] *Id.* § 1226(a); *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

[19] *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025); *see also ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

[20] *Bautista*, 813 F. Supp. 3d at 1094.

1226.[21]  Currently, ICE detains Sanchez under § 1225 and deems him ineligible for a bond hearing.[22]

### C.  Procedural History

On June 2, 2026, Sanchez filed his Petition seeking habeas relief.[23]  He challenges the legality of his detention and asserts three claims: (1) violation of the INA, (2) violation of the Due Process Clause of the United States Constitution, and (3) violation of the Administrative Procedures Act.[24]  On June 4, 2026, the court issued an Order to Show Cause for Respondents to explain why the Petition should not be granted.[25]  Respondents responded,[26] and Sanchez filed a Reply.[27]

## LEGAL STANDARD

Habeas corpus "test[s] proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void."[28]  The court may issue a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws . . . of the United States."[29]  Sanchez bears the burden of establishing his detention is unlawful.[30]

---

[21] *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025).

[22] *Petition* ¶ 34.

[23] *Id.*

[24] *Id.* at 13–18.

[25] Dkt. 5, *Order to Show Cause*.

[26] *Response*.

[27] Dkt. 10, *Reply in Support of Petition for Writ of Habeas Corpus* (*Reply*).

[28] *Fay v. Noia*, 372 U.S. 391, 423 (1963).

[29] 28 U.S.C. § 2241(c)(3).

[30] *See Walker v. Johnston*, 312 U.S. 275, 286 (1941).

**ANALYSIS**

### 1.  Merits

Whether Sanchez's detention violates the INA depends on how the court interprets the statute.  The dispute centers on the language of § 1225(b)(2)(A): "In the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding."[31]  Sanchez argues § 1225 does not apply to noncitizens like him who are arrested in the interior of the United States.[32]  He instead argues § 1226 applies,[33] which would entitle Sanchez to a bond hearing.[34]  In contrast, Respondents argue § 1225 applies to aliens like Sanchez who were never admitted to the United States.[35]

Courts across the country have addressed these same arguments, and their decisions primarily fall into two camps.  The Second Circuit,[36] Sixth Circuit,[37] Eleventh Circuit,[38] and the majority of the district courts that have considered the issue adopt Sanchez's statutory

---

[31] 28 U.S.C. § 1225(b)(2)(A).

[32] *Petition* at 13–14.

[33] *Id.*

[34] *See* 28 U.S.C. 122(a).

[35] *Response* at 5–7.

[36] *Barbosa da Cunha v. Freden*, No. 25-03141-pr, 2026 WL 1146044 (2d Cir. 2026).

[37] *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).

[38] *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026).

interpretation.[39]  But the Fifth Circuit,[40] Eight Circuit,[41] and one judge within this District have agreed with Respondents' interpretation.[42]  The Tenth Circuit heard oral argument on the issue in its May sitting but has yet to issue a ruling.[43]

The undersigned has already opined on the issue.  In *Chavez v. Noem*,[44] this court rejected the government's new interpretation of § 1225(b)(2) and held § 1226 governs the detention of aliens who are arrested in the interior of the United States years after they arrive without inspection.[45]  The government concedes the court's reasoning in *Chavez* applies here, though it disagrees with the court's analysis.[46]  Accordingly, for the same reasons articulated in *Chavez*, the court concludes Sanchez is entitled to habeas relief.

## 2. Remedies

The question remains as to the proper remedy.  The Petition asks the court to order "Respondents to immediately release Mr. Sanchez from custody" and "not to take him into

---

[39] *See, e.g.*, *Torres Medina v. Tjaden*, No. 2:26-cv-00195-JNP, 2026 WL 800677 (D. Utah Mar. 23, 2026); *Lemus Cristales v. Arbon*, No. 2:26-cv-00217-JNP, 2026 WL 892874 (D. Utah Mar. 31, 2026); *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184 (D. Utah Jan. 16, 2026); *Carbajal v. Wimmer*, No. 2:26-cv-00093, 2026 WL 353510 (D. Utah Feb. 9, 2026); *Chavez Rascon v. Noem*, No. 2:26-cv-00161-RJS, 2026 WL 800684 (D. Utah Mar. 23, 2026); *Velasquez Montillo v. Brooksby*, No. 4:26-cv-00018-DN-PK, 2026 WL 592355 (D. Utah Mar. 3, 2025); *Uzcategui v. Brooksby*, No. 4:26-cv-00020-DN-PK, 2026 WL 622751 (D. Utah Mar. 5, 2026); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, 804 F. Supp. 3d 265 (D. Mass. 2025); *Diaz Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025); *Bautista*, 813 F. Supp. 3d; *Francisco T. v. Bondi*, No. 2:25-cv-3219, 2025 WL 3490809 (D. Minn. Sept. 5, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Santos M.C. v. Olson*, No. 25-CV-4264, 2025 WL 3281787 (D. Minn. Nov. 25, 2025); *see also Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) (adopting Sanchez's interpretation when denying stay pending appeal); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (finding the government's new interpretation is likely unlawful).

[40] *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

[41] *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

[42] *See Cisneros v. Noem*, 820 F. Supp. 3d 1265 (D. Utah 2026).

[43] *See id.*, appeal docketed, No. 26-4015 (10th Cir. Feb. 12, 2026); *Quiroz v. Mullin*, No. 5:25-CV-01349-PRW (W.D. Okla.), appeal docketed, No. 26-6019 (10th Cir. Jan. 28, 2026).

[44] No. 26-cv-00161-RJS, 2026 WL 800684 (D. Utah Mar. 23, 2026).

[45] *Id.* at *4–5 (citing *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184 (D. Utah Jan. 16, 2026)); *see also De la Cruz Gonzalez v. Leyva*, No. 2:26-cv-00240, 2026 WL 972937 (D. Utah Apr. 10, 2026).

[46] *Response* at 4; *see also Reply* at 1.

custody again without first holding a hearing before a neutral decisionmaker, at which the government bears the burden of establishing flight risk and danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released."[47]

In *De la Cruz Gonzalez v. Leyva*, the undersigned concluded the petitioner was entitled to a bond hearing within 7 days because he was detained pursuant to § 1226 and not § 1225.[48] Respondents argue that same relief, a bond hearing, should be the extent of the relief entered here.[49] Sanchez argues the proper remedy is not a bond hearing but rather immediate release.[50] He advances two arguments: (1) the INA permits rearrest only if there is a material change in circumstances, and there has not been a change in Sanchez's circumstances;[51] and (2) even if the INA permits Sanchez's rearrest, the Constitution prohibits it because Sanchez's liberty interest was revoked without being given a pre-deprivation hearing.[52] The court considers Sanchez's arguments in turn.

### A. INA Argument

Sanchez first argues the INA requires his immediately release because the government has failed to show a sufficient change in circumstance to warrant his detention.[53] Releasing a noncitizen on their own recognizance indicates ICE determined the alien was neither a flight risk

---

[47] *Petition* at 18–19.

[48] *De la Cruz*, 2026 WL 972937, at *7.

[49] *Response* at 6.

[50] *Petition* at 18–19.

[51] *Reply* at 2.

[52] *Id.* at 4.

[53] *Id.* at 2–4; *see also Petition* at 13–14.

nor danger to the community.[54]  Once that has been determined, the INA does not permit rearrest "absent a change of circumstance."[55]  He argues the record does not show a change of circumstance, such that the INA prohibits Sanchez's continued detention.[56]

But this argument fails to identify an authority empowering this court to make that determination, and he cites no cases where a federal district court exercised such jurisdiction. Respondents direct the court to *De La Cruz v. Baltazar*,[57] where District of Colorado declined to order immediate release because "petitioner's detention is governed by § 1226 and because § 1226 authorizes detention."[58]  Instead, the District of Colorado ordered a bond hearing for the immigration court to make that determination.[59]  Because Sanchez does not establish the court has the authority to determine whether circumstances around his flight risk or danger to the community have changed, the court declines to order Sanchez's release on these grounds.

### 3.  Due Process Argument

Second, Sanchez argues, even if there was a material change in circumstance for which the INA would allow Sanchez's re-arrest, Due Process prohibits his re-arrest without first

---

[54] *See Ledesma Gonzalez v. Bostock*, 808 F.Supp.3d 1189, 1202-1203 (W.D. Wash. Oct. 7, 2025) (citing 8 C.F.R. § 2361(c)(8)); *Barrenechea v. Albarran*, No. 25-cv-07883-VC, 2025 WL 2717279, at *1 (N.D. Cal. Sept. 22, 2025) ("ICE's release of Barrenechea on his own recognizance in 2020 can only be understood as reflecting a determination that he did not pose a flight risk or danger to the community.").

[55] *Saravia for A.H. v. Session*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)).

[56] *See Reply* at 2–4 (challenging the government's failure to provide evidence of the ATD program violation and administrative warrant).

[57] No. 26-cv-00360-PAB, 2025 WL 439217 (D. Colo. Feb. 17, 2026).

[58] *Id.* at *3.

[59] *Id.*

holding a pre-deprivation hearing.[60]  The government's Response does not address this argument.[61]

Noncitizens who are released have a heightened liberty interest than those who are detained.[62]  In the criminal parole context, the Tenth Circuit has stated, liberty interests arising upon release are "*inherent* in the Due Process clause."[63]  Sanchez relies on three out-of-circuit district court cases to show the Due Process Clause requires his release: *Carballo v. Andrews*,[64] *Guillermo M.R. v. Kaiser*,[65] and *Anderson v. Chernut*.[66]

The reliance on *Carballo* and *Guillermo* is misplaced because in both of those cases, the court did not order the release of a noncitizen in immigration detention.  In *Carballo*, the Eastern District of California ordered a bond hearing within fourteen days and did not order immediate release.[67]  In *Guillermo*, the Northern District of California granted a temporary restraining order enjoining the United States from rearresting the petitioner, who had been released on bond two years prior.[68]  There, the noncitizen had notice of the impending re-arrest and filed his challenge before.[69]  But the *Guillermo* decision provides no authority for the court to order Sanchez's

---

[60] *Reply* at 4–5; *see also Petition* at 14–17.

[61] *See Response*.

[62] *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025) (noncitizen petitioner who was previously released has different liberty interest than "the liberty interests of a detained person"); *see also Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464, *4 (E.D. Cal. Aug. 15, 2025).

[63] *Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) (discussing liberty interest in the context of a parolee).

[64] No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464 (E.D. Cal. Aug. 15, 2025).

[65] No. 25-cv-05436-RFL, 2025 WL 1810076 (N.D. Cal. June 30, 2025).

[66] No. 1:26-cv-01960-DAD-CKD, 2026 WL 809990 (E.D. Cal. Mar. 24, 2026).

[67] *Carballo*, 2025 WL 2381464, at *8–9.

[68] *Guillermo*, 2025 WL 1810076, at *1; *see also Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1038 (N.D. Cal. 2025) (converting temporary restraining order into a preliminary injunction).

[69] *Guillermo*, 2025 WL 1810076, at *1.

9

release here, as it only enjoined respondents from refraining from rearrest until a bond hearing was held.

The case most on point is *Anderson,* but even still, the court is unclear on its authority to review discretionary acts of the executive.  In *Anderson*, the noncitizen had previously been granted advance parole pursuant to 8 U.S.C. § 1182(d)(5).[70]  She was then arrested in late 2025 and received a post-detention bond hearing about two months after she was detained.[71]  She argued her detention violated her due process rights because she did not receive a pre-deprivation bond hearing, while respondents argued that she was lawfully detained under § 1226(a), which entitles her only to a post-detention bond hearing.[72]  The Eastern District of California found the petitioner's due process rights were indeed violated and that the "post-deprivation bond hearing provided two months after petitioner's detention and only after she has sought federal habeas relief does not satisfy due process."[73]  The court then ordered petitioner's immediate release and restrained respondents from re-detaining her without providing her a pre-detention hearing.[74]

But *Anderson* does not identify the court's jurisdiction to order such relief.  The court may not review DHS's discretionary acts.[75]  Detention under § 1226 is a discretionary action.[76]

---

[70] *Anderson*, 2026 WL 809990, at *2.

[71] *Id.*

[72] *Id.* at *2.

[73] *Id.* at *2.

[74] *Id.* at *4.

[75] *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (stripping this court of jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title").

[76] *See* 8 U.S.C. § 1226(a); *id.* § 1226(b); 8 C.F.R. § 236.1(c)(9).

As a court of limited jurisdiction,[77] this court cannot order relief where it lacks jurisdiction to do so.

Accordingly, the court concludes the proper approach to vindicate Sanchez's rights is to order a bond hearing within seven days.[78]

## ORDER

For the reasons stated above, the court GRANTS in PART the Petition.[79]  The court further ORDERS as follows:

1. Respondents must provide Sanchez a bond hearing under 8 U.S.C. § 1226 within seven days of this order.

2. Respondents are ENJOINED from denying bond to Sanchez on the ground that he is detained under 8 U.S.C. § 1225(b)(2).

3. Respondents are ORDERED to file a status report within fourteen days of this order, confirming the hearing took place.

---

[77] *See Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) ("Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.").

[78] The court notes its Order to Show Cause directed Respondents to focus on the applicability of *Chavez*, which the Response does. *See Order to Show Cause* at 5; *Response* at 4.  Accordingly, the Response minimally addresses the proper relief and does not address the specific arguments as to the due process argument. *See Response* at 6.  For future petitions, the undersigned will specifically order Respondents to opine on the appropriate remedy should a petition be granted, and encourages Respondents to do so regardless of specific direction in the Order to Show Cause.  For this Petition, the court concludes the best approach to vindicate Sanchez's rights within a reasonable time is to order a bond hearing within seven days, rather than ordering supplemental briefing and setting a hearing all while Sanchez remains in detention.

[79] Dkt. 1.

SO ORDERED this 22nd day of June 2026.

BY THE COURT

_____

JUDGE ROBERT J. SHELBY
United States District Court